In re: The **FIRST UNION CORP. SECURITIES LITIGATION.**

No. 3:99CV237–MCK.

United States District Court, W.D. North Carolina, Charlotte Division.

Jan. 28, 2000.

---

Donald M. Brown, Jr., Charlotte, NC, Kenneth J. Vianale, Maya Saxena, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, Boca Raton, FL, Steven G. Schulman, Samuel H. Rudman, Russell J. Gunyan, New York City, for James R. Allen.

Edward T. Hinson, Ann L. Hester, James McElroy & Diehl, Charlotte, NC, Luther Zeigler, Crowell & Moring, LLP, Washington, DC, Richard J. Morvillo, Jeffrey Robertson, Kirkpatrick & Lockhart, LLP, Washington, DC, for Edward E. Crutchfield, John R. Georgius, James H. Hatch, First Union Corporation.

## ORDER

McKNIGHT, United States Magistrate Judge.

**THIS MATTER IS BEFORE THE COURT** for ruling on Plaintiffs' Stipulation regarding the appointment of lead plaintiff and lead counsel (doc. 37), Defendants' objection and memorandum in support (doc. 38), Plaintiffs' response (doc. 39), and Defendants' reply and submission of supplemental authority. (Docs. 40, 43.)

### I. Procedural background

In June 1999, Plaintiffs began filing putative class action suits alleging securities fraud against First Union and three of its senior executives. Plaintiffs initially filed twelve separate lawsuits, nine in North Carolina and three in Pennsylvania, with the same operative allegations. On August 19, 1999, the North Carolina parties filed a joint stipulation and proposed scheduling order establishing a pretrial schedule and consolidating the North Carolina cases. This Court signed the order on August 20, 1999.

On September 7, 1999, the Pennsylvania cases were transferred to this district to be consolidated with the North Carolina cases. The Pennsylvania parties agreed to abide by the schedule proposed in the August 19, 1999, order. The consolidation of all cases was ordered by this Court on October 25, 1999.

On August 9, 1999, Plaintiff James R. Allen and class members Vincent Russo, Louis G. Papa and Forest E.R. Gordon, dubbing themselves the "proposed First Union Lead Plaintiffs" ("Milberg Weiss Group") filed a motion and supporting memorandum to be appointed as lead plaintiffs and for this Court's approval of their selection of Milberg Weiss Bershad Hynes & Lerach, LLP, ("Milberg Weiss") and Schiffrin & Barroway, LLC, as lead counsel and Brown & Associates as liaison counsel.[1] (Docs. 8, 9.) That same day, Plaintiff Hotel Trades Council and Hotel Association of New York City, Inc. ("HTC Fund") filed a competing motion and memorandum for the HTC Fund's appointment as lead plaintiff and the Court's approval of the selection of Schoengold & Sporn as Lead Counsel.[2] (Docs. 11, 12.) Defendants did not object to either motion.

On October 26, 1999, these competing parties filed a Stipulation Among Plaintiffs And Proposed Amended Scheduling Order stating that they "reached an agreement to resolve the pending competing motions" and moved this Court to appoint both groups as co-lead plaintiffs and to approve the selection of Milberg Weiss, Shiffrin & Barroway, and Schoengold & Sporn as co-lead Counsel, and Brown & Associates and Lesense & Connette as co-liaison Counsel. (Doc. 37, p. 2.) Plaintiffs also proposed an extension of the deadline for filing the Amended Complaint and a requirement of all parties that service on local counsel be effected by hand and service on lead counsel be effected by overnight mail. (Doc. 37.)

Defendants objected to the Plaintiffs' Stipulation as to the appointment of lead plaintiff and counsel and further objected to the modification of the August 20, 1999, scheduling order and the service requirements. The issues of lead plaintiff appointment, Lead Counsel approval, and the scheduling and service modifications will be addressed seriatim.

---

1. The Milberg Weiss Group consists of 245 unrelated class members and entities whose aggregated losses purportedly total in excess of $700,000.

2. The HTC Fund Group's losses total approximately $63,000.

## II.  Discussion

### A.  Lead Plaintiff Appointment

#### 1.  Reform Act Standard

The Private Securities Litigation Reform Act of 1995 ("Reform Act") provides that once appropriate notice has been given, the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i).

Under the Reform Act, there is a presumption that the most adequate plaintiff in any private action is the person or group of persons who: (1) has either filed the complaint or made a motion in response to a notice; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). This presumption is rebutted only upon proof by a member of the proposed plaintiff class that the presumptively most adequate plaintiff (1) will not fairly and adequately protect the interests of the class, or (2) is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II).

The issue in dispute here is what appropriately constitutes a "group of persons" under the Reform Act.

#### 2.  Analysis

As noted above, initially the Milberg Weiss Group and the HTC Fund Group filed competing motions for the appointment of lead plaintiff, to which Defendants voiced no objection. The groups then filed a stipulation that both groups be appointed as co-lead plaintiffs. Defendants objected to the stipulation, asking that it be rejected and that the Court decide between the earlier competing motions. Defendants argue that the combination of the groups should be rejected because the aggregation of unrelated persons or groups as lead plaintiff is contrary to the purpose of the Reform Act. For the following reasons, this Court finds that the Plaintiffs' stipulation regarding lead plaintiff should be approved.

As an initial matter, Plaintiffs argue that Defendants lack standing to object at all. While courts have split on the issue of defendants' standing to object to lead plaintiff appointment[3], it is not necessary to conclusively reach that issue here. Regardless of whether Defendants formally have standing (in which case this Court is obligated to consider their arguments), nothing in the Reform Act prevents this Court from considering the arguments raised and authorities cited by Defendants. This is especially appropriate here where the stipulation amongst Plaintiffs prevents any adversarial presentation of this issue. *See King v. Livent*, 36 F.Supp.2d at 190 (*citing Gunty*, finding that defendants

---

**3.** *Compare Fischler v. Amsouth Bancorporation*, No. 96–1567–CIV–T–17A, 1997 WL 118429, at *2, 1997 U.S. dist. LEXIS 2875 at *6 (M.D.Fla. Feb. 6, 1997)("only members of the plaintiff class may offer evidence to rebut the presumption in favor of the most adequate plaintiff") and *Gluck v. CellStar Corp.*, 976 F.Supp. 542, 550 (N.D.Tex.1997)("[t]he statute is clear that only potential plaintiffs may be heard regarding appointment of lead plaintiff") with *King v. Livent, Inc.*, 36 F.Supp.2d

187, 190–91 (S.D.N.Y.1999) (noting that nothing in the text of the Reform Act prevented defendants from being heard) and *Howard Gunty Profit Sharing v. Quantum Corp.*, Civ. No. 96–20711, *slip op.* at 6–7 (N.D.Cal. Feb. 6, 1997)("[W]hen ... there are no other potential lead plaintiffs to challenge a moving party, the Court must rely on the defendants to insure that the requirements of [the Reform Act] are satisfied").

have standing to object, especially where there are no competing plaintiffs, noting that "[o]n balance, a therapeutic appointment process such as is envisaged by the [Reform Act] will work better with more information than less").

As to the issue of aggregation, it is undisputed that the group now comprising the proposed co-lead plaintiffs is a compilation of persons who were unrelated prior to this litigation. Defendants argue that only a close-knit group with a relationship preceding the litigation can be a "group of persons" for Reform Act purposes.

Citing the legislative history of the Reform Act, Defendants argue that "much of the impetus for the Reform Act was Congress' perception that securities class actions largely benefited [sic], and were largely controlled by, the plaintiff's counsel rather than by plaintiffs themselves." (Doc. 39, p.5.) Defendants argue that the proposed group is inappropriate and contrary to the objectives of the Reform act which sought to give control of the litigation to the plaintiffs, not their counsel.

The court in *In re Telxon Corp. Sec. Lit.*, 67 F.Supp.2d 803 (N.D.Ohio 1999), observed that appointing an amalgamation of a large group of unrelated persons, unified only by their choice of attorneys, would be inconsistent with the intent of the Reform Act because:

> Such a 'group' would be a 'lead plaintiff' in name only; in substance those individuals would essentially constitute a collection of lead plaintiffs, unbound by any allegiance to one another and unlikely to function as a unified whole. In such circumstances, the Court would be left with little assurance that the 'group' speaks with a collective voice.

*Id.* at 813.

In their reply and submission of additional authority, Defendants further cite two recent decisions from the Northern District of California, *Andrew Aronson v. McKesson HBOC, Inc.*, 79 F.Supp.2d 1146 (N.D.Cal.1999) and *In Re Network Associates, Inc. Securities Litigation and Consolidated Cases*, No. C99–01729 (N.D.Cal.) Both the *Aronson* and *Network Associates* courts echoed the *Telxon* court's concern that the appointment of a group of unrelated plaintiffs would mean a loss of individual control of the litigation due to the inability of the group to act as a unified decision-maker that would act in the best interests of the entire class.

Plaintiffs respond that courts have routinely approved the appointment of multiple lead plaintiffs, regardless of their relationship prior to the litigation, who are chosen from the aggregate group of class members with the largest total losses. Plaintiffs cite a string of authorities for this proposition: *D'Hondt v. Digi, Inc.*, 1997 WL 405668, 1997 U.S. Dist. LEXIS 7700 (D.Minn. Apr.3, 1997)(21 lead plaintiffs and 3 lead counsel); *Zuckerman v. Foxmeyer Health Corp.*, 1997 WL 314422 at *2 (N.D.Tex. Mar.28, 1997)(11 lead plaintiffs and 2 lead counsel); *Nager v. Websecure, Inc.*, Civ. No. 97–10662–GAO, 1997 WL 773717, at *1, 1997 U.S. Dist. LEXIS 19601 at *3 (D.Mass. Nov. 26, 1997)(10 lead plaintiffs and 3 lead counsel); *Lax v. First Merchants Acceptance Corp.*, No. 97C2715, 1997 WL 461036, 1997 U.S. Dist. LEXIS 11866 (N.D.Ill. Aug. 11, 1997)(30 lead plaintiffs); *Orman v. America Online*, Civ. No. 97–264–A (E.D.Va. Dec. 12, 1997)(16 lead plaintiffs); *McNamara v. Bre–X Minerals Ltd., et al.*, Civ. No. 5–97–CV–159 (E.D. Texas Oct. 27, 1997)(14 lead plaintiffs); *Hughes v. CAI Wireless Systems, Inc.*, No. 96–CV–1857 (N.D.N.Y. Feb. 27, 1997)(11 lead plaintiffs and 2 lead counsel); and *Payne v. Micro Warehouse, Inc.*, No. 3:96 CV 01920 (D.Conn. Feb. 4, 1997)(14 lead plaintiffs and 2 lead counsel).

Plaintiffs further argue that the appointment of multiple lead plaintiffs furthers the interests of the entire class, citing the court's observation in *In re Oxford Health Plans Sec. Litig.*, 182 F.R.D. 42 (S.D.N.Y. 1998) that:

> The use of multiple lead plaintiffs will best serve the interests of the proposed class in this case because such a structure will allow for pooling, not only of the knowledge and experience, but also of the resources of the plaintiff's counsel in order to support what could prove to be a costly and time consuming litigation.

182 F.R.D. at 46.

In addition this Court notes that the cases cited by Defendants concerned multiple groups of plaintiffs and institutional investors all vying against each other for appointment as lead plaintiff, making the concerns regarding control of the litigation vis-a-vis the best interests of the class members a relevant inquiry.

■ Here, however, Plaintiffs are not competing against each other for appointment. They have joined together and composed a representative group with which all members are satisfied. This case presents the novel situation where all plaintiffs have joined into a stipulation as to the appointment of lead plaintiff. None of the parties cited, nor was this Court able to find, another case involving such a stipulation by all plaintiffs which was objected to by the defendants.

Although the cases cited by Defendant are certainly well-reasoned and may well represent a trend against unrelated groups in lead plaintiff appointment[4], this Court is not persuaded that their concerns regarding the best interests of the class are implicated here where all plaintiffs have filed the joint stipulation. Moreover, there is now an overwhelming weight of authority allowing the appointment of such an unrelated group to serve as lead plaintiffs. Accordingly, this Court will approve Plaintiffs' joint Stipulation and appoint James R. Allen, Forest E.R. Gordon, Vincent Russo and the HTC Fund as lead plaintiffs.

## B. Lead Counsel Appointment

Under the Reform Act, the court is to appoint a lead plaintiff, who then selects lead counsel, subject to approval by the court. 15 U.S.C. § 78u–4(a)(6). Defendants object to the appointment of Plaintiffs' chosen counsel of three law firms as co-lead counsel and two law firms as co-liaison counsel. Defendants argue that such an arrangement will result in an unwieldy class action, unreasonable attorneys' fees, duplication of services, and further compound the risk that the attorneys, not the plaintiffs, will control the litigation.

■ This Court is also concerned by the number of firms proposed by the Plaintiffs. However, Plaintiffs assure this Court that this litigation will run smoothly and that they have organized themselves into "an efficient, unified team" and respond that the participation of several firms is a result of a number of firms and litigants independently filing cases in this action. (Doc. 40, p. 2.) Notwithstanding Defendants' contentions to the contrary, any issues regarding either the reasonableness of attorneys' fees or duplication of services can, and will, be closely scrutinized by this Court. Of course, the Reform Act expressly limits the total attorney fees to "a reasonable percentage of the

---

4. *See, e.g.,* Paul Elias, Funds Feud in Stock Case, *The Recorder/Cal Law,* November 11, 1999.

amount of damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u–4(a)(6). Plaintiffs assured this Court that they will work together efficiently and without duplication of services and this Court will hold them to their assurances. Accordingly, Plaintiffs' choice of counsel is approved by this Court.

### 1. Modification of the Scheduling Order

■ Plaintiffs' Stipulation contains two modifications to the current scheduling order. First, Plaintiffs propose amending the scheduling order to extend the deadline for filing the amended complaint to 45 days after the entry of the order appointing lead plaintiffs. The original scheduling order, which was stipulated to by all parties and approved ·by this Court by order dated August 20, 1999, required the amended complaint be filed within 20 days of the entry of the order. Essentially, Plaintiffs request an additional 25 days. As the Plaintiffs have not shown good cause for the additional time and further had already stipulated to the prior deadline, this proposed change will not be approved. The scheduling order of August 20, 1999, will control.

Further, this Court will not look favorably on a motion for extension of time to file the amended complaint, as forecast by the Plaintiffs, in order to "end run" the scheduling order. The Plaintiffs have presented their group and counsel as an efficient, well-oiled machine, with the vast experience in securities class action necessary to resolve the issues presented here. This Court relied on Plaintiffs' assurances that this litigation would be conducted most efficiently by approving their choices as lead plaintiff and lead counsel. This Court, therefore, expects Plaintiffs to adhere to their previously-agreed scheduling order.

■ Plaintiffs also propose, again without cause shown, a requirement that service be effected by hand on liaison counsel and by overnight mail on lead counsel. Defendant objects to this requirement as unduly burdensome. This Court will not impose on any party any service requirement beyond that expressly provided for by the Rules of Civil Procedure. The parties may certainly discuss and agree amongst themselves a more efficient means of service but this Court declines to order it of any party over their objection.

### III. Conclusion

For the foregoing reasons, **IT IS HEREBY ORDERED THAT:**

(1) James R. Allen, Forest E.R. Gordon, Vincent Russo, and the Hotel Trades Council and Hotel Association of New York city, Inc. Pension Fund ("HTC Fund") are appointed as lead plaintiffs;

(2) Milberg Weiss Bershad Hynes & Lerach, LLP; Shiffrin & Barroway, LLP; and Schoengold & Sporn, P.C. are appointed as co-lead counsel, and Brown & Associates, PLLC, and Lesesne & Connette are appointed as co-liaison counsel; and

(3) the scheduling order of August 20, 1999 will control this litigation.

**IT IS FURTHER ORDERED THAT** the motions regarding appointment of lead plaintiff and lead counsel filed prior to the stipulation, [Docs. 8–2, 8–3, 11–2, 11–3, and 19–1] are **DENIED AS MOOT.**