In re Tyco Internat'l MDL          MD-00-1335-B  8/17/00

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


In re Tyco International, Ltd.          MDL No.  00-MD-1335-B
   Securities Litigation                          ALL CASES


Opinion No. 2000 DNH 182

### MEMORANDUM AND ORDER

These securities fraud actions have been transferred to this court for consolidated pretrial proceedings.  Plaintiffs in most of the underlying actions allege that Tyco International Ltd., along with two of its top officers, L. Dennis Kozlowski and Mark H. Swartz (the "individual defendants"), made material misrepresentations and/or omitted to disclose material, non-public information concerning Tyco's accounting practices and financial condition, in violation of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder.  The complaint in the underlying action filed by plaintiff Harold Landau claims that the individual

defendants violated the Insider Trading and Securities Fraud Enforcement Act, § 20A of the Exchange Act, as amended, 15 U.S.C. § 78t-1, by selling large amounts of Tyco common stock while in possession of material, non-public information.

Currently before this court are a number of motions relating to the appointment of lead plaintiff and lead counsel pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 ("the PSLRA"), which amended the Exchange Act. A group of three plaintiffs, who collectively refer to themselves as the "Tyco Shareholder Group" ("TSG"), seek appointment as lead plaintiff and approval of their choice of lead counsel.[1] Landau does not oppose the TSG's appointment as lead plaintiff for those plaintiffs whose claims arise under §§ 10(b) and 20(a) and Rule 10b-5, but seeks appointment as lead plaintiff of a separate

---

[1] The TSG originally contained four members. Since the original motions were filed, however, one plaintiff -- Woodway Financial Advisors -- has withdrawn from the group and its bid for appointment as lead plaintiff. See Woodway Financial Advisors' Notice of the Withdrawal of the Req. That It Be Named Lead Pl. (Doc. #29). Accordingly, I consider only the remaining members of the TSG in this memorandum and order.

class of plaintiffs whose claims arise under § 20A of the Exchange Act. Landau also seeks approval of his counsel as lead counsel for the separate § 20A class. The defendants have opposed the TSG's motion, and both the TSG and the defendants have opposed Landau's motion.[2]

---

[2] Both the TSG and the defendants have elected to rely upon briefs originally filed in Greenberg v. Tyco Int'l, Ltd., 99-CIV-11930-(JSR), an underlying action brought in the Southern District of New York, with respect to the lead plaintiff and lead counsel determination. See TSG's Mem. of Law in Supp. of its Unopposed Mot. for Appointment as Lead Pls. and for Approval of its Selection of Lead Counsel (Doc. #8); TSG's Mem. of Law in Further Supp. of its Mot. (Doc. #8); Defs.' Mem. in Opp'n to Lead Pl.-Lead Counsel Mots. of the Proposed Tyco Lead Pls. and the Olenicoff Group (Doc. #9); Defs.' Supplemental Mem. (Doc. #9). Landau's current motion is a renewal of the motion originally filed in his underlying action before this court. See Landau's Mot. for Appointment as Lead Pl. of the Section 20A Class and for Appointment of His Counsel as Lead Counsel for That Class (Doc. #10). Both the TSG and the defendants opposed the renewed Landau motion, see TSG's Mem. in Opp'n to the Mot. for Appointment of a Separate Lead Pl. and Lead Counsel for a Section 20A Claim (Doc. #13); Defs.' Mem. in Opp'n to Landau's Mot. (Doc. #14), and Landau filed a reply in further support of his renewed motion, see Rep. Mem. in Further Supp. of Landau's Mot. (Doc. #15). Finally, the TSG filed an additional brief and supporting affidavits in response to this court's order of July 19, 2000. See TSG's Mem. in Resp. to the Court's July 19, 2000 Mem. and Order (Doc. #28), with attached affidavits.

## I.   The PSLRA, 15 U.S.C. § 78u-4

Congress enacted the PSLRA in 1995 to redress certain perceived abuses in securities class actions.  See In re Party City Secs. Lit., 189 F.R.D. 91, 103 (D.N.J. 1999); In re Oxford Health Plans, Inc., Secs. Lit., 182 F.R.D. 42, 43 (S.D.N.Y. 1998).[3]  Among other objectives, Congress sought to ensure that such actions would be controlled by investors with a significant stake in the litigation, rather than by lawyers with an independent financial interest in bringing "strike" suits.  See Greebel v. FTP Software, Inc., 194 F.3d 185, 191 (1st Cir. 1999) ("The enactment of the PSLRA in 1995 marked a bipartisan effort to curb abuse in private securities lawsuits, particularly the filing of strike suits.") (citing H.R. Conf. Rep. No. 104-369, at 32 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 731); In re Lucent Techs., Inc., Secs. Lit., 194 F.R.D. 137, No. CIV. A. 00-621(AJL), 2000 WL 628805, at *4 (D.N.J. Apr. 26, 2000) (noting

_____

[3]   Motion to amend denied by 182 F.R.D. 51 (S.D.N.Y. 1998), appeal dismissed sub nom., Metro Servs. v. Wiggins, 158 F.3d 182 (2d Cir. 1998).

that in enacting the PSLRA Congress sought to "empower investors so that they, not their lawyers, control private securities litigation") (quoting In re Party City Secs. Lit., 189 F.R.D. at 103) (internal quotation marks omitted); Greebel v. FTP Software, Inc., 939 F. Supp. 57, 58 (D. Mass. 1996) ("The principal impetus underlying [the PSLRA] was the belief that the plaintiff's bar had seized control of class action suits, bringing frivolous suits on behalf of only nominally interested plaintiffs in the hope of obtaining a quick settlement.") (citing Sen. R. No. 104-98, at 8-11 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 687-90). To accomplish this objective, the PSLRA establishes a new mechanism for appointing a lead plaintiff and lead counsel.[4]

---

[4] The PSLRA also imposes certain procedural requirements on plaintiffs bringing securities fraud actions. The statute's certification provision requires that a plaintiff seeking to serve as a representative party provide the court with certain information, including the plaintiff's transactions in the security at issue during the class period. See 15 U.S.C. § 78u-4(a)(2)(A) (Supp. 1996). The statute's notice provision provides in relevant part that

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of

In a consolidated case such as this, the court must appoint a lead plaintiff as soon as practicable after consolidation. See 15 U.S.C. § 78u-4(a)(3)(B)(ii) (Supp. 1996). Under the PSLRA, the lead plaintiff (or the "most adequate plaintiff") is "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." Id. § 78u-4(a)(3)(B)(i) (Supp. 1996). The statute creates a rebuttable presumption under which the lead (or most adequate) plaintiff is "the person or group of persons" that (1) either filed a complaint or moved for appointment as lead plaintiff, (2) has, in the court's

---

the purported plaintiff class--
(I)  of the pendency of the action, the claims asserted therein, and the purported class period; and
(II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

Id. § 78u-4(a)(3)(A)(i) (Supp. 1996). The defendants challenge the adequacy of various notices published by the proposed co-lead counsel for the TSG. I have reviewed the notices in question, and I am satisfied that although they may not be models of what Congress had in mind when it sought to reform the process by which private securities actions are brought, they minimally comport with the statutory requirements.

determination, "the largest financial interest in the relief sought by the class," and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. Id. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc) (Supp. 1996). This presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Id. § 78u-4(a)(3)(B)(iii)(II) (Supp. 1996).

Finally, the PSLRA provides that the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." Id. § 78u-4(a)(3)(B)(v) (Supp. 1996).

## II. Appointment of Lead Plaintiff

As noted above, a group of three plaintiffs have moved for appointment as lead plaintiff in this action. The group, which styles itself the Tyco Shareholders Group (or TSG), consists of (1) Superius Securities (MPP), (3) Market Street Securities, Inc., and (3) Andrei Olenicoff (or the "Olenicoff group").

## A.    The Membership of the TSG

### 1.    Superius Securities (MPP)

Plaintiff Superius Securities (MPP) (hereinafter "Superius") claims to have suffered an estimated loss of $7,631,371, the largest loss claimed by any member of the TSG. See Affidavit of Kenneth J. Vianale in Supp. of Proposed Tyco Lead Pls.' Mot. (Doc. #8) (hereinafter "Vianale Affidavit"), Ex. D; TSG's Mem. of Law in Supp. of its Unopposed Mot. for Appointment as Lead Pls. and for Approval of its Selection of Lead Counsel (Doc. #8) at 2. Superius attests that it purchased the Tyco securities described in its certification on its own account, and that it has or had sole record/legal title and sole equitable/beneficial title to those securities. See Superius Securities' Resps. Regarding Title to Tyco Securities ¶ 2, appended to TSG's Mem. in Resp. to the Court's July 19, 2000 Mem. and Order (Doc. #28). Superius further attests that it purchased its Tyco securities for its own benefit or loss, and did not act as a broker, short-seller, or hedge fund in making those purchases. See id. ¶ 3.

### 2. __Market Street Securities, Inc.__

Plaintiff Market Street Securities, Inc. (hereinafter "Market Street") claims to have suffered an estimated loss of $4,272,693, the second largest amount claimed by any member of the TSG. See Vianale Affidavit, Ex. D; TSG's Mem. of Law in Supp. of its Unopposed Mot. for Appointment as Lead Pls. and for Approval of its Selection of Lead Counsel (Doc. #8) at 2. Market Street attests that it purchased the Tyco securities described in its certification for its own account, and that it took equitable/beneficial title to those securities. See Resp. of Pl. Market Street Securities, Inc. Regarding Title to Securities ¶¶ 3(i), (iii), appended to TSG's Mem. in Resp. to the Court's July 19, 2000 Mem. and Order (Doc. #28). Market Street's clearing agent, ABN-AMRO Sage Corp., took record/legal title to the Tyco securities. See id. ¶ 3(ii). Market Street purchased the securities for its own benefit, and did not act as a broker, short-seller, or hedge fund when making its purchases. See id. ¶ 3(v).

### 3.   __Andrei Olenicoff (or the "Olenicoff group")__

Andrei Olenicoff purchased 30,000 shares of Tyco common stock on behalf of Sovereign Bancorp and 20,000 shares of Tyco common stock on behalf of Continental Realty Corp. See Affidavit of Norman Berman in Supp. of Mot. of the Olenicoff Group (Doc. #8) (hereinafter "Berman Affidavit"), Exhibit C. The total estimated loss associated with the combined 50,000 shares is $1,200,000. See TSG's Mem. of Law in Supp. of its Unopposed Mot. for Appointment as Lead Pls. and for Approval of its Selection of Lead Counsel (Doc. #8) at 2.

Olenicoff serves as director of both Sovereign Bancorp and Continental Realty Corp. See Berman Affidavit, Exhibit C. He made the decision to invest in Tyco securities on the two entities' behalf and seeks to serve as the "designated representative" of those entities "for the purpose of this litigation." Affidavit of Andrei Olenicoff ¶ 1, appended to TSG's Mem. in Resp. to the Court's July 19, 2000 Mem. and Order (Doc. #28). The Tyco securities described in Olenicoff's certifications were purchased on the accounts of, and for the

benefit of, Sovereign Bancorp and Continental Realty Corp. See id. ¶ 2(i). The securities were held in nominee name for the benefit of the two entities by Salomon Smith Barney; the two entities were the equitable/beneficial owners of the securities. See id. ¶¶ 2(ii), (iii). In purchasing the Tyco securities, neither Olenicoff nor the two entities that he serves as director acted as a broker, short-seller, or hedge fund. See id. ¶ 2(iv).

The TSG has made inconsistent representations as to whether it is Andrei Olenicoff, in his individual capacity, or the "Olenicoff group," consisting of Sovereign Bancorp and Continental Realty Corp., that serves as one of its members. In Olenicoff's original motion, filed before he joined forces with the other members of the TSG, the proposed lead plaintiff was identified as the "Olenicoff group," i.e., Sovereign Bancorp and Continental Realty Corp. See Mem. in Supp. of Mot. of the Olenicoff Group (Doc. #8) at 1. Later, when Olenicoff joined the other members of the TSG in a motion for appointment as lead plaintiff, it was Olenicoff the individual, rather than the two

-11-

entities, that the TSG identified as its member.  See TSG's Mem. of Law in Supp. of its Unopposed Mot. for Appointment as Lead Pls. and for Approval of its Selection of Lead Counsel (Doc. #8) at 1 & n.1, 2; TSG's Mem. of Law in Further Supp. of its Mot. (Doc. #8) at 4.

It is clear from the affidavit filed by Olenicoff in response to my July 19, 2000 order that it is Sovereign Bancorp and Continental Realty Corp., rather than Olenicoff himself, that took beneficial title to the Tyco securities described in the certifications and that suffered the claimed loss of approximately $1,200,000.  See Affidavit of Andrei Olenicoff ¶ 2(i)-(iii), appended to TSG's Mem. in Resp. to the Court's July 19, 2000 Mem. and Order (Doc. #28).  Accordingly, it is the two entities, which the TSG collectively refers to as the "Olenicoff group," that are properly considered to be a member of the TSG.[5]

---

[5]  In its most recent submission, the TSG recognizes that the two entities, rather than Olenicoff, are the proper constituents of the group.  See TSG's Mem. in Resp. to the Court's July 19, 2000 Mem. and Order (Doc. #28) at 4-5.

-12-

While Olenicoff is not a member of the TSG, the two entities that comprise the "Olenicoff group" have designated him to serve as their representative for purposes of this litigation.

Accordingly, I must consider whether the TSG, a group consisting of Superius, Market Street, and the "Olenicoff group" (i.e., Sovereign Bancorp and Continental Realty Corp.), may be appointed lead plaintiff in this action.

B.     **Propriety of a Group as Lead Plaintiff**

As indicated in my July 19, 2000 memorandum and order, the plain language of the PSLRA clearly contemplates the appointment of more than one plaintiff as lead plaintiff.  The statute directs a court to appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i) (emphasis added).  The statute also instructs a court to treat as the presumptive lead plaintiff that "person or group of persons" that meet specified criteria.  Id. § 78u-4(a)(3)(B)(iii)(I) (emphasis added).

Despite this statutory language, courts have disagreed as to whether the PSLRA allows for the appointment of multiple plaintiffs as lead plaintiff. Although some courts have declined to appoint a group of plaintiffs, especially when that group consists of a large number of unrelated persons,[6] others have concluded that the appointment of a relatively small group of unrelated persons as lead plaintiff is permissible under the

---

[6] See, e.g., Sakhrani v. Brightpoint, Inc., 78 F. Supp.2d 845, 853 (S.D. Ind. 1999) ("This court agrees that selecting as 'lead plaintiff' a large group of investors who have the largest aggregate losses but who have nothing in common with one another beyond their investment is not an appropriate interpretation of the term 'group' in the PSLRA."); In re Network Assocs., Inc., Secs. Lit., 76 F. Supp.2d 1017, 1023-27 (N.D. Cal. 1999) (concluding that large groups of unrelated investors cannot serve as lead plaintiff); Aronson v. McKesson HBOC, Inc., 79 F. Supp.2d 1146, 1154 (N.D. Cal. 1999) (concluding that "the lead plaintiff must be an individual person or entity, or at most, a close-knit 'group of persons'"); Mitchell v. Complete Management, Inc., No. 99 CIV. 1454(DAB), 99 CIV. 2087(DAB), 99 CIV. 2342(DAB), 99 CIV. 2660(DAB), 99 CIV. 2846(DAB), 1999 WL 728678, at *3-4 (S.D.N.Y. Sept. 17, 1999) (denying motion to appoint group of 141 investors as lead plaintiff); In re Telxon Corp. Secs. Lit., 67 F. Supp.2d 803, 813, 816 (N.D. Ohio 1999) (concluding that appointment of an amalgamation of unrelated persons as lead plaintiff is inconsistent with the PSLRA); In re Donnkenny Inc. Secs. Lit., 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997) (rejecting proposal that two unrelated institutional investors and four individual investors be appointed as lead plaintiffs).

PSLRA.[7]

I determine that the appointment of a group of three substantial shareholders as lead plaintiff is consistent with the language and purpose of the PSLRA.[8]  While a group comprised of

---

[7]  See, e.g., In re The First Union Corp., Secs. Lit., 3:99CV237-MCK, 2000 U.S. Dist. LEXIS 2267, at *12 (W.D.N.C. Jan. 27, 2000) (appointing three individuals and one institutional investor as lead plaintiffs); In re Party City Secs. Lit., 189 F.R.D. 91, 114 (D.N.J. 1999) (appointing institutional investor and individual investor as lead plaintiffs); In re Nice Sys. Secs. Lit., 188 F.R.D. 206, 220-21 (D.N.J. 1999) (appointing group of five individuals as lead plaintiff); Takeda v. Turbodyne Techs., Inc., 67 F. Supp.2d 1129, 1131, 1139 (C.D. Cal. 1999) (appointing group of seven unrelated investors lead plaintiff); In re Baan Co. Secs. Lit., 186 F.R.D. 214, 217 (D.D.C. 1999) ("The Lead Plaintiff decision should be made under a rule of reason but in most cases three should be the initial target, with five or six as the upper limit."); In re Advanced Tissue Sciences Secs. Lit., 184 F.R.D. 346, 352-53 (S.D. Cal. 1998) (refusing to appoint group of "over 250 unrelated, individual investors" as lead plaintiffs, but appointing smaller group of six plaintiffs as lead plaintiffs); In re Oxford Health Plans, Inc., Secs. Lit., 182 F.R.D. 42, 45 (S.D.N.Y. 1998) (appointing two institutional investors and group of three large individual investors as "co-lead plaintiffs"); Chill v. Green Tree Fin. Corp., 181 F.R.D. 398, 412 (D. Minn. 1998) (appointing group of six individual investors as lead plaintiff); Greebel v. FTP Software, Inc., 939 F. Supp. 57, 64-65 (D. Mass. 1996) (appointing group of three individuals as lead plaintiff).

[8]  While I am not convinced that increasing the number of lead plaintiffs increases their ability to "more effectively withstand any supposed effort by the class counsel to seize

many small shareholders might be unwieldy and lack the proper incentive to serve as an effective lead plaintiff, <u>see</u> <u>In re Nice Sys. Secs. Lit.</u>, 188 F.R.D. 206, 220-21 (D.N.J. 1999), a group that consists of a small number of large shareholders should be capable of managing this litigation and providing direction to class counsel.[9]  <u>See</u> <u>Takeda v. Turbodyne Techs., Inc.</u>, 67 F. Supp.2d 1129, 1135 (C.D. Cal. 1999) (noting that district courts have frequently interpreted "group of persons" language in PSLRA lead plaintiff provision "to mean a small group of manageable

---

control of the class claims," <u>D'Hondt v. Digi Int'l, Inc.</u>, Civ. No. 97-5(JRT/RLE), Civ. No. 97-156(JRT/RLE), Civ. No. 97-351(JRT/RLE), Civ. No. 97-295(JRT/RLE), Civ. No. 97-538(JRT/RLE), Civ. No. 97-440(JRT/RLE), 1997 U.S. Dist. LEXIS 17700, at *13 (D. Minn. Apr. 2, 1997); <u>see</u> <u>also</u> <u>In re Oxford Health Plans, Inc., Secs. Lit.</u>, 182 F.R.D. at 49 ("[I]n actuality a greater number of plaintiffs allows them, as a group, to wield more control over counsel."), neither am I persuaded that appointing a small group as lead plaintiff necessarily diminishes the group's ability to control class counsel.

[9]  My conclusion that a group of three substantial investors is an adequate lead plaintiff under the PSLRA is consistent with the view expressed by the Securities and Exchange Commission, which has acknowledged the propriety of appointing as lead plaintiff a group containing no more than five plaintiffs. <u>See</u> <u>In re Baan Co. Secs. Lit.</u>, 186 F.R.D. at 216-17, 224-225 (quoting and appending SEC amicus brief).

size that is capable of joint decisionmaking regarding the litigation"). As one court recently noted, "[w]here the interests of proposed lead plaintiffs are aligned, concerns regarding the division of authority and dilution of control are not paramount." In re Party City Secs. Lit., 189 F.R.D. 91, 114 (D.N.J. 1999). The same conclusion applies when the number of plaintiffs in the proposed lead plaintiff group is small enough to allow for coordinated decision making.

Finally, while it appears that Superius, Market Street, and the Olenicoff group had no relationship prior to the inception of this litigation, I decline to read into the PSLRA a pre-existing relationship requirement that appears nowhere on the face of the statute. See In re Baan Co. Secs. Lit., 186 F.R.D. 214, 216 (D.D.C. 1999) ("The text of the PSLRA does not limit the composition of a 'group of persons' to those only with a pre-litigation relationship, nor does the legislative history provide a sound enough foundation to support such a gloss."). A recent opinion from the Western District of North Carolina suggests, moreover, that insistence on a pre-existing relationship among

members of a proposed lead plaintiff group would be particularly unnecessary where, as in this case, previously competing candidates for lead plaintiff have come together in a joint motion unopposed by any member of the purported plaintiff class. See In re The First Union Corp., Secs. Lit., 3:99CV237-MCK, 2000 U.S. Dist. LEXIS 2267, at *12 (W.D.N.C. Jan. 27, 2000) ("Although the cases cited by Defendant are certainly well-reasoned and may well represent a trend against unrelated groups in lead plaintiff appointment, this Court is not persuaded that their concerns regarding the best interests of the class are implicated here where all plaintiffs have filed the joint stipulation. Moreover, there is now an overwhelming weight of authority allowing the appointment of such an unrelated group to serve as lead plaintiffs.") (footnote omitted).

C.     **Application of Statutory Criteria to the Group**

To qualify as the presumed lead plaintiff, the TSG must (1) have either filed a complaint or moved for appointment as lead plaintiff, (2) have, in the determination of the court, the largest financial interest in the relief sought by the class, and

(3) otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure.  See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

The first two requirements are easily satisfied.  First, the TSG filed a motion to be appointed lead plaintiff.  Second, taken in the aggregate, the members of the TSG have claimed an estimated loss of $13,104,064.  See TSG's Mem. of Law in Supp. of its Unopposed Mot. for Appointment as Lead Pls. and for Approval of its Selection of Lead Counsel (Doc. #8) at 2.  This combined estimated loss constitutes the largest demonstrated financial interest in the relief sought by the class.

Rule 23 of the Federal Rules of Civil Procedure also poses no obstacle to the TSG's appointment as lead plaintiff.  At this early stage of the proceedings, the plaintiffs seeking appointment need only make a preliminary showing that they satisfy the typicality and adequacy requirements of Rule 23(a)(3) and (a)(4).[10]  See Chill v. Green Tree Fin. Corp., 181 F.R.D.

---

[10]  Limiting the inquiry at this stage to typicality and adequacy is sensible because these two requirements "focus . . . on the desired characteristics of the class representative."  1

-19-

398, 407 n.8 (D. Minn. 1998); <u>In re Olsten Corp. Secs. Lit.</u>, 3 F. Supp.2d 286, 296 (E.D.N.Y.), <u>opinion adhered to on reconsideration</u>, 181 F.R.D. 218 (E.D.N.Y. 1998). As one court has recognized, "[t]he analysis inevitably comes down to the question of whether Movant[s] will fairly and adequately represent the interests of the class." <u>Fischler v. Amsouth Bancorporation</u>, 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875, at *8 (M.D. Fla. Feb. 6, 1997).[11]

To satisfy Rule 23's typicality requirement, a class representative's injuries must arise from the same event or course of conduct as the injuries allegedly suffered by other class members, and its claims must be based on the same legal

---

Herbert B. Newberg & Alba Conte, <u>Newberg on Class Actions</u> § 3.13 (3d ed. 1992).

[11] In this section of this memorandum and order, I limit my analysis to whether the TSG has satisfied this burden with respect to the claims of those plaintiffs who allege violations of §§ 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder (the "§ 10(b) plaintiffs"). In the next section, I consider whether the TSG has demonstrated that it will fairly and adequately represent the interests of those plaintiffs whose claims arise under § 20A of the Exchange Act (the "§ 20A plaintiffs").

theory.  See Modell v. Eliot Sav. Bank, 139 F.R.D. 17, 22 (D.

Mass. 1991).[12]  The proper inquiry is "whether a [class

representative], in presenting his case, will necessarily present

the claims of the absent plaintiffs."  Priest v. Zayre Corp., 118

F.R.D. 552, 555 (D. Mass. 1988) (citation and internal quotation

marks omitted).

The injuries asserted by the members of the TSG -- i.e., the

losses associated with their purchase of Tyco securities -- arise

from the same omissions and/or misrepresentations alleged by all

the other § 10(b) plaintiffs.  The TSG's claims, like the claims

of all the other § 10(b) plaintiffs, are based on the theory that

the defendants perpetrated a fraud upon the market and thereby

---

[12]  Typicality may be absent when a purported representative is "subject to unique defenses that would divert attention from the common claims of the class."  Modell, 139 F.R.D. at 22. While the defendants argue that at least some members of the TSG may be subject to unique defenses and thus that their claims may be atypical, see Defs.' Mem. in Opp'n to Lead Pl.-Lead Counsel Mots. of the Proposed Tyco Lead Pls. and the Olenicoff Group (Doc. #9) at 13-15, as noted in the text below I conclude that it would be more appropriate to consider this issue at the class certification stage, when defendants clearly have standing to raise it.

artificially inflated the price of Tyco securities during the relevant period. Accordingly, the typicality requirement is satisfied.

Whether a class representative "will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), depends upon (1) whether the interests of the representative will conflict with the interests of any class members, and (2) whether the representative is represented by qualified, experienced counsel capable of vigorously prosecuting the proposed litigation. See Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985); Curtis v. Comm'r, Maine Dep't of Human Servs., 159 F.R.D. 339, 341 (D. Me. 1994); Priest, 118 F.R.D. at 556.

At this juncture, I perceive no conflict between the interests of the TSG and the interests of the other § 10(b) plaintiffs. All of these plaintiffs share a common interest in maximizing the recovery on their common claims. Moreover, the magnitude of the estimated losses alleged by the TSG indicates that its members have a strong interest in pursuing this

-22-

litigation.  Finally, a review of the resumes of the four law firms proposed as lead counsel makes it clear that they have the qualifications and expertise necessary to provide vigorous representation in this action.[13]  Accordingly, I conclude that the adequacy requirement has been satisfied.

### D.   **The Landau Motion**

As noted at the outset of this memorandum and order, Harold Landau has moved to be appointed lead plaintiff of a separate class of plaintiffs whose claims arise under § 20A of the Exchange Act.  Landau also seeks approval of his counsel as lead counsel for this class of § 20A plaintiffs.  Although he does not oppose the TSG's motion with respect to the § 10(b) plaintiffs, Landau contends that the § 20A plaintiffs need separate leadership and representation because their claim targets a distinct set of defendants, allows for a distinct remedy, depends on different evidence, and contains a special standing

---

[13]   I consider the issue of whether the proposed structure of four co-lead counsel is permissible and/or appropriate under the PSLRA in section III, infra.

requirement.[14]  In short, Landau argues that the TSG will not

fairly and adequately represent the interests of the § 20A

plaintiffs.[15]

While Landau's motion highlights the possibility of future

conflict between the § 10(b) plaintiffs and the § 20A plaintiffs,

I conclude that there is no present need for separate leadership

and/or representation for the § 20A plaintiffs.  Rather, as

---

[14]  The relief that Landau's motion seeks -- which could be characterized as the recognition either of multiple classes or of a subclass -- does not appear to be contemplated under the PSLRA's lead plaintiff provisions.  Rather, the statute seems to contemplate, even in consolidated actions such as this, the appointment of a lead plaintiff for a single purported plaintiff class.  See 15 U.S.C. §§ 78u-4(a)(3)(B)(i), 78u-4(a)(3)(B)(ii), 78u-4(a)(3)(B)(iii)(I)(bb), 78u-4(a)(3)(B)(iii)(II), 78u-4(a)(3)(B)(iv), 78u-4(a)(3)(B)(v).  It may prove difficult, however, to manage a class action composed of several distinct classes or subclasses with only a single lead plaintiff.  For example, litigating such an action with only a single lead plaintiff would be problematic where the lead plaintiff was subject to a conflict of interest that prevented it from adequately representing the interests of a subclass.  I decline to reach a final resolution of the issue now and reserve the right to reconsider it at the class certification stage if I determine that a separate § 20A subclass is necessary.

[15]  I need not address the first two statutory criteria under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Landau does not contest that the TSG has satisfied those criteria.

-24-

explained below, I determine that the TSG has made the requisite preliminary showing regarding typicality and adequacy with respect to the § 20A plaintiffs.

"Rule 23(a)(3) does not require the claims of the Proposed Lead Plaintiffs to be identical to those of the class. Rather, the typicality requirement is satisfied when the plaintiff's claim arises from the same event or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." In re Lucent Techs., Inc., Secs. Lit., 194 F.R.D. 137, No. CIV. A. 00-621(AJL), 2000 WL 628805, at *11 (D.N.J. Apr. 26, 2000) (internal citations and quotation marks omitted); see also Takeda v. Turbodyne Techs., Inc., 67 F. Supp.2d. 1129, 1136 (C.D. Cal. 1999) ("Under [Rule 23's] permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical.") (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998)) (internal quotation marks omitted); Modell v. Eliot Sav. Bank, 139 F.R.D. 17, 22 (D. Mass. 1991) ("The claims of the class representative

are considered typical when the plaintiff's injuries arise from the same course of conduct as do the injuries that form the basis of the class claims, and when the plaintiff's claims are based on the same legal theory.") (internal citations omitted).

Based on these interpretations of Rule 23's typicality requirement, I conclude that the §§ 10(b), 20(a), and Rule 10b-5 claims (collectively, "the § 10(b) claims") presented by the TSG are typical of the claim asserted by the § 20A plaintiffs. Both the § 10(b) claims and the § 20A claim appear to be based on the same (or similar) alleged misrepresentations and/or omissions concerning Tyco's accounting practices and financial condition. Compare Compl. in Greenberg v. Tyco Int'l, Ltd., 99-CIV-11930-(JSR) (S.D.N.Y.) (reproduced as Exhibit A to Vianale Affidavit) (hereinafter "Greenberg Compl.") ¶¶ 11, 30-39, 44-48, with Compl. in Landau v. Kozlowski, Civil No. 00-56-B (D.N.H.) (Doc. #1 in Landau action) (hereinafter "Landau Compl.") ¶¶ 1, 18-28, 31, 35, 38, 39. All of these claims sound in fraud.

The § 10(b) and § 20A claims also share certain common legal elements, at least in the context of the present action. A claim

-26-

under § 20A requires proof of a predicate violation of the Exchange Act or the rules and regulations promulgated thereunder. See In re Advanta Corp. Secs. Lit., 180 F.3d 525, 541 (3d Cir. 1999); Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc., 32 F.3d 697, 703 (2d Cir. 1994); In re VeriFone Secs. Lit., 11 F.3d 865, 872 (9th Cir. 1993). In the present case, the predicate violation alleged in support of the § 20A claim is based on the same (or similar) pattern of omissions and/or misrepresentations alleged by the § 10(b) plaintiffs. See Landau Compl. ¶¶ 29 (A)&(B), 37-40. Conversely, to prevail upon their claims, the § 10(b) plaintiffs must prove the required state of mind, i.e., scienter.[16] See 15 U.S.C. § 78u-4(b)(2); Greebel v. FTP Software, Inc., 194 F.3d 185, 194 (1st Cir. 1999); Alfus v. Pyramid Tech. Corp., 745 F. Supp. 1511, 1519 (N.D. Cal. 1990). In the present case, the TSG has indicated that it will seek to

---

[16] "The Supreme Court has defined scienter as 'a mental state embracing intent to deceive, manipulate, or defraud.'" Greebel v. FTP Software, Inc., 194 F.3d 185, 198 (1st Cir. 1999) (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976)).

-27-

satisfy the scienter requirement by proving the same alleged acts of insider trading that give rise to the § 20A claim.[17]  See Greenberg Compl. ¶¶ 8, 9, 14, 49; TSG's Mem. in Opp'n to the Mot. for Appointment of a Separate Lead Pl. and Lead Counsel for a Section 20A Claim (Doc. #13) at 8.  Because the § 10(b) and § 20A claims share a common factual basis and a close legal relationship, I conclude that the typicality requirement is satisfied.

I also determine that the TSG will fairly and adequately protect the interests of the § 20A plaintiffs.  As noted previously, the adequacy requirement under Rule 23(a)(4) focuses on whether the proposed representative has interests that

_____

[17]  In a recent case interpreting the pleading requirements under the PSLRA, the First Circuit concluded "that allegations of unusual insider trading by a defendant with access to material non-public information can support a strong inference of scienter."  Greebel v. FTP Software, Inc., 194 F.3d at 198.  The court cautioned, however, that "[a]t a minimum, the [insider] trading must be in a context where defendants have incentives to withhold material, non-public information, and it must be unusual, well beyond the normal patterns of trading by those defendants."  Id.

conflict with the interests of any absent class members.[18]  See

Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir.

1985); Curtis v. Comm'r, Maine Dep't of Human Servs., 159 F.R.D.

339, 341 (D. Me. 1994); Priest v. Zayre Corp., 118 F.R.D. 552,

556 (D. Mass. 1988).

Landau argues that there is a conflict between the § 10(b)

plaintiffs and the § 20A plaintiffs because the two groups "have

different interests when it comes to establishing and

apportioning damages."  Landau's Mot. for Appointment as Lead Pl.

of the Section 20A Class and for Appointment of His Counsel as

Lead Counsel for That Class (Doc. #10) at 9; see also Rep. Mem.

in Further Supp. of Landau's Mot. (Doc. #15) at 3 (alluding to

"conflicts that arise when establishing and apportioning damages

_____

[18]  The adequacy requirement also calls for an inquiry into
whether the proposed representative is represented by qualified,
experienced counsel capable of vigorously prosecuting the
proposed litigation.  See Andrews v. Bechtel Power Corp., 780
F.2d 124, 130 (1st Cir. 1985); Curtis v. Comm'r, Maine Dep't of
Human Servs., 159 F.R.D. 339, 341 (D. Me. 1994); Priest v. Zayre
Corp., 118 F.R.D. 552, 556 (D. Mass. 1988).  I have already
determined that the counsel selected by the TSG satisfy this
standard.

-29-

from a single fund") (emphasis in original).  While I recognize the potential conflict identified by Landau, "courts have generally declined to consider conflicts, particularly as they regard damages, sufficient to defeat class action status at the outset unless the conflict is apparent, imminent, and on an issue at the very heart of the suit."  Blackie v. Barrack, 524 F.2d 891, 909 (9th Cir. 1975); see also Bokusky v. Edina Realty, Inc., No. 3-92 CIV. 223, 1993 WL 515827, at *7 (D. Minn. Aug. 6, 1993); Alvarado Partners, L.P. v. Mehta, 130 F.R.D. 673, 676 (D. Colo. 1990).  While the potential for conflict based on the different remedies available to the § 10(b) and § 20A plaintiffs is real, the lead plaintiff determination is not the appropriate stage in the litigation to address this concern.

Because the TSG will fairly and adequately represent the § 20A plaintiffs as well as the § 10(b) plaintiffs, I appoint the TSG as the lead plaintiff for all plaintiffs in this consolidated action.  Landau's motion is accordingly denied.[19]  This

_____

[19]  This resolution of Landau's motion is consistent with the opinions of courts that have addressed analogous motions.  In Aronson v. McKesson HBOC, Inc., 79 F. Supp.2d 1146 (N.D. Cal.

-30-

determination, however, in no way precludes Landau from raising the same issues presented in his current motion at the class certification stage, when such concerns are entitled to a more thorough analysis under Rule 23. See Aronson v. McKesson HBOC,

---

1999), a group of plaintiffs whose claims arose under provisions other than § 10(b) or were based on transactions involving securities other than common stock (the "niche" plaintiffs) moved for appointment as lead plaintiffs for their separate causes of action. See id. at 1150. The "niche" plaintiffs raised many of the same arguments made here by Landau, e.g., that their claims might involve different defendants, allow for distinct remedies, and/or require different showings of scienter and proof than the § 10(b) claims. See id. at 1150-51. The Aronson court rejected the "niche" plaintiffs' motion for reasons similar, in large part, to those given in this memorandum and order. See id. Similarly, in In re Cendant Corp. Litigation, 182 F.R.D. 144 (D.N.J. 1998), a court faced with arguments analogous to those presented by Landau declared that

> The [PSLRA] demands only that the interests of the class members be adequately represented by the lead plaintiff. Thus, notwithstanding every plaintiff's undeniable interest in the outcome most favorable to his or her position, every warrior in this battle cannot be a general. . . . [I]n pursuit of their interests, the [presumptive lead plaintiffs] will necessarily seek to establish the elements of every plaintiff's claim. Under these circumstances, such self-interest of the presumptive lead plaintiffs will ensure adequacy of representation for all the class.

Id. at 148 (internal citation omitted).

<u>Inc.</u>, 79 F. Supp.2d 1146, 1151 n.4 (N.D. Cal. 1999); <u>In re</u>

<u>Cendant Corp. Lit.</u>, 182 F.R.D. 144, 148 n.4 (D.N.J. 1998).

## III. <u>Approval of Lead Counsel</u>

As noted at the outset, the PSLRA provides that lead counsel

shall be selected by the lead plaintiff, "subject to the approval

of the court." 15 U.S.C. § 78u-4(a)(3)(B)(v). In determining

whether to approve the lead plaintiff's choice of counsel, I

consider whether that choice is well-calculated to protect the

interests of the purported plaintiff class. <u>See</u> <u>In re Milestone</u>

<u>Scientific Secs. Lit.</u>, 183 F.R.D. 404, 418 (D.N.J. 1998).

The TSG has proposed that four law firms -- Bernstein

Liebhard & Lifshitz LLP, Milberg Weiss Bershad Hynes & Lerach

LLP, Weiss & Yourman, and Berman DeValerio & Pease LLP

-- serve as co-lead counsel for the purported class. <u>See</u> TSG's

Mem. of Law in Supp. of its Unopposed Mot. for Appointment as

Lead Pls. and for Approval of its Selection of Lead Counsel (Doc.

#8) at 5. The TSG has also sought to use the firm of Upshall,

Cooper & Temple, P.A. as liaison counsel.[20]  See TSG's Mot. for
an Order for Preservation of Disc. Material and Service of Third
Party Subpoenas (Doc. #16) at 2; TSG's Supplemental Mot. for
Orders for Preservation of Disc. Material by Defs. and Service of
Nonparty Subpoenas (Doc. #19) at 3.

As other courts have recognized, the approval of a
multiplicity of firms as co-lead counsel raises the specter of
"duplicative services and a concomitant increase in [the]
attorneys' fees" ultimately charged to the purported plaintiff
class.  In re Milestone Scientific Secs. Lit., 183 F.R.D. at 418.
At the same time, the approval of multiple firms as co-lead
counsel may provide the purported class with the benefits of
combined resources and expertise, which may be especially

---

[20]  "Liaison Counsel is ordinarily charged with
administrative matters, such as communications between the Court
and other counsel, and convenes meetings of counsel, advises
parties of developments in the case, and coordinates the
activities and the positions of the class.  Such counsel may act
for the group in managing document depositories, and in resolving
scheduling conflicts.  Liaison counsel will usually have offices
in the same locality as the forum."  Chill v. Green Tree Fin.
Corp., 181 F.R.D. 398, 413 n.13 (D. Minn. 1998) (citing Manual
for Complex Litigation § 20.221 (3d ed. 1995)).

valuable in a complex case where the defendants are represented by several large and highly qualified law firms.[21]  See In re Oxford Health Plans, Inc., Secs. Lit., 182 F.R.D. 42, 46 (S.D.N.Y. 1998) (noting that purported plaintiff class may benefit from "pooling . . . the resources of the plaintiffs' counsel in order to support what could prove to be a costly and time-consuming litigation").

In the present case, I determine that the potential dangers stemming from multiple representation, while real, are less weighty than the benefits that it may produce.  As a preliminary matter, I note that the four proposed co-lead counsel have assured the court that they will devise (or have already devised) a system for dividing and managing the workload arising from this litigation efficiently and without duplication.  See Tr. of July 13, 2000 Hearing (Doc. #26) at 67-69; TSG's Mem. in Resp. to the

---

[21]  The Securities and Exchange Commission has recognized the potential benefits and dangers of multiple lead counsel, and has argued that courts should "inquire into the appropriateness of multiple lead counsel in the circumstances of each securities class action" in which such an arrangement is proposed.  See In re Baan Co. Secs. Lit., 186 F.R.D. 214, 229 (D.D.C. 1999) (appending SEC amicus brief).

Court's July 19, 2000 Mem. and Order (Doc. #28) at 9. The proposed co-lead counsel have also represented that they have no pre-existing arrangement regarding legal fees and expenses in this litigation, and that they are content to leave any future award to the court's discretion. See Tr. of July 13, 2000 Hearing (Doc. #26) at 67, 69, 72; TSG's Mem. of Law in Further Supp. of its Mot. (Doc. #8) at 22. The PSLRA expressly limits the total fees and expenses that may be awarded to counsel for a plaintiff class to no more than "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6) (Supp. 1996). Plaintiffs' lead and liaison counsel are hereby put on notice that this court will not approve any award of fees and expenses that reflects duplication, inefficiency, or the costs of coordinating the efforts of the firms involved in the representation. Furthermore, approval of this co-lead and liaison counsel arrangement is conditioned upon plaintiffs' counsel speaking with a single voice in their dealings with the defendant and defense counsel; simply put, I will not allow the co-lead and liaison

counsel structure to impose upon the defendants or defense counsel the burden of doing battle with a five-headed hydra.  If it appears at any point in this litigation that these conditions are not satisfied, I will not hesitate to revisit the issue.

Mindful of the conditions set forth above, I approve the selection of Bernstein Liebhard & Lifshitz LLP, Milberg Weiss Bershad Hynes & Lerach LLP, Weiss & Yourman, and Berman DeValerio & Pease LLP as co-lead counsel for the TSG and for the purported plaintiff class.[22]  I also approve the selection of Upshall, Cooper & Temple, P.A. as liaison counsel.

---

[22]  At oral argument, one of the proposed co-lead counsel candidly acknowledged that each of the four proposed co-lead counsel originally represented one member of the TSG.  Tr. of July 13, 2000 Hearing (Doc. #26) at 10.  While the origin of the proposed representation structure is not relevant to my analysis of the lead counsel issue, I emphasize that the co-lead counsel approved in this memorandum and order represent the TSG and the purported plaintiff class as a whole.  The co-lead counsels' professional duty to the lead plaintiff and the purported class supersedes any duties arising from prior lawyer-client relationships with individual plaintiffs.  Co-lead counsel have expressed their agreement with this proposition, see id. at 66-67, and I will hold them to that agreement.

## IV.  Conclusion

For the reasons set forth in this memorandum and order, I appoint the TSG, a group consisting of Superius, Market Street, and the Olenicoff group, as lead plaintiff in this consolidated action.  I deny Landau's motion for the appointment of a separate lead plaintiff and lead counsel for the § 20A plaintiffs, without prejudice to raise the issue of separate leadership and/or representation for the § 20A plaintiffs at the class certification stage of this litigation.  Finally, based on the conditions expressed above, I approve the selection of Bernstein Liebhard & Lifshitz LLP, Milberg Weiss Bershad Hynes & Lerach LLP, Weiss & Yourman, and Berman DeValerio & Pease LLP as co-lead counsel and approve the selection of Upshall, Cooper & Temple, P.A. as liaison counsel.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

August 17, 2000

cc:  Michael J. Beck, Judicial Panel on MDL
     Steven Schulman, Esq.

Jeffrey Haber, Esq.
Joseph Weiss, Esq.
Norman Berman, Esq.
Frederick E. Upshall, Jr., Esq.
Paul Kfoury, Sr., Esq.
Steven Madsen, Esq.
Lewis Liman, Esq.
Edward Haffer, Esq.