**FMC CORPORATION, Appellant,**

v.

**TAIWAN TAINAN GIANT INDUSTRIAL CO., LTD., and Frederick G. Fierch, Appellees.**

**No. 820, Docket 83–7945.**

United States Court of Appeals, Second Circuit.

Argued Feb. 2, 1984.
Decided March 6, 1984.

Mari M. Gursky, Philadelphia, Pa. (Paul H. Haagen, Dechert, Price & Rhoads, Philadelphia, Pa., Alexander C. Cordes, Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N.Y., of counsel), for appellant.

Richard T. Sullivan, Buffalo, N.Y. (Joseph G. Makowski, Albrecht, Maguire, Heffern & Gregg, Buffalo, N.Y., of counsel), for appellees.

Before OAKES and CARDAMONE, Circuit Judges, and BONSAL, District Judge.*

PER CURIAM.

Plaintiff, FMC Corporation (FMC), has taken an expedited appeal from a Memorandum and Order of the United States District Court for the Western District of New York dated October 27, 1983 (John T. Elfvin, Judge). Judge Elfvin denied FMC's request for a preliminary injunction to protect against disclosure of its alleged trade secrets. We reverse and remand. In addition, we order that the case be set for trial as soon as possible and that discovery be conducted in an expedited manner.

FMC manufactures and distributes formulated carbofuran, an agricultural insecticide, under the trade name Furadan. Appellee Frederick G. Fierch was an employee at FMC who, from 1975 until his employment was terminated in 1981, became familiar with the processing and distribution of Furadan as a Furadan shift supervisor and later as FMC's Supervisor of International Sales. While at FMC Fierch signed an "invention agreement" in which he promised not to divulge information learned while at FMC.

In 1983, Fierch allegedly became an employee of appellee Taiwan Tainan Giant Industrial Co., Ltd. (TGI), as Marketing Manager.[1] One of his responsibilities was to be the marketing of TGI's brand of carbofuran. In a letter to prospective TGI customers, Fierch promised to apply his experience in manufacturing of carbofuran gained at FMC in his new job at TGI.

FMC sought a temporary restraining order and later a preliminary injunction preventing Fierch from using his knowledge of FMC's trade secrets relating to Furadan. In particular, FMC alleged a breach of its confidentiality agreement, tortious interference with contract on TGI's part, misappropriation of trade secrets, unfair competition, and breach of the fiduciary duty of loyalty.

There are three aspects of carbofuran manufacture and distribution which FMC asserts are protectable trade secrets. Carbofuran, which is created in a patented process not at issue here, is converted into "dustless base carbofuran" by FMC as part of the process by which the dangerous chemical is made into a commercially useful product. This dustless base is then

---

* Of the Southern District of New York, sitting by designation.

1. Pending the outcome of this litigation, TGI has evidently severed its connection with Fierch.

shipped to various wholesale customers, who, pursuant to confidentiality agreements with FMC, convert the dustless base into a commercially acceptable product in their own "formulator" plants. FMC wishes to enjoin Fierch and TGI from making use of three distinct trade secrets: the processes used to make dustless base carbofuran, the processes used in the formulator plants, and the names of Furadan customers allegedly retained by Fierch.

The district court found, for purposes of preliminary injunctive relief: (1) that the invention agreement was enforceable; (2) that the process of converting the dustless base carbofuran into a commercially usable product was a trade secret; (3) that the process of making the dustless base carbofuran, as well as customer lists, are *not* protectable trade secrets; and (4) that the protectable formulator information is not in fact protected under trade secret laws because it is currently protected by patent in the United States. We can agree with only the first two of these findings.[2] Applying the standard for preliminary injunctive relief, *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979), we find that appellant has demonstrated both irreparable harm and likelihood of success on the merits, and we therefore order that the district court should issue the preliminary injunction.

■ FMC's formulator process would appear to be a paradigmatic trade secret under New York law, consisting as it does of formulae for compounds, processes of manufacturing, methods for treating material, and equipment specifications. *See Minnesota Mining & Manufacturing Co. v. Technical Tape Corp.*, 23 Misc.2d 671, 192 N.Y.S.2d 102, 112–13 (N.Y.Sup.Ct. 1959), *aff'd*, 15 A.D.2d 960, 226 N.Y.S.2d 1021 (App.Div.1962). New York follows the Restatement of Torts § 757, comment b (1939).[3] *Id.*

■ While the district court correctly stated that customer lists are trade secrets only if the names on the list are not "readily ascertainable" from sources outside an employer's business, *Leo Silfen, Inc. v. Cream*, 29 N.Y.2d 387, 393–95, 328 N.Y. S.2d 423, 427–29, 278 N.E.2d 636, 639–41 (1972), the court's finding that the names in question here were readily ascertainable was clearly erroneous. The record indicates that it would be very difficult if not impossible for TGI to discover these FMC clients without Fierch's help. The fact that some of the names could conceivably have been gleaned by TGI by "backtracking" from Furadan's retail customers does not prove that these names are readily available to TGI. *Heyman v. AR. Winarick, Inc.*, 325 F.2d 584, 590 (2d Cir.1963).

■ Thus FMC is likely to succeed on the merits in proving that the information in question is trade secret information. That Fierch and TGI sought to misappropriate the information is clear, as the district court found implicitly, and as the letter Fierch wrote on TGI letterhead to prospective carbofuran customers establishes. The only question remaining, then, is whether FMC has established irreparable harm. The district court correctly found that the information in question is of great value to FMC, and it is clear that the loss of trade secrets cannot be measured in money damages. *E.g., Franke v. Wiltschek*, 209 F.2d 493, 497–98 (2d Cir.1953); Note, *Protection and Use of Trade Secrets*, 64 Harv.L.Rev. 976, 982–83 (1951). A trade secret once lost is, of course, lost forever.

■ A narrowly drawn injunction should therefore have been issued based on the misappropriation of trade secret and breach of confidentiality agreement claims. *Cf. Air Products and Chemicals, Inc. v.*

---

**2.** The court's factual finding that the formulator process is protected by patent is clearly erroneous, based, apparently, on the court's misunderstanding of testimony concerning the patents held by FMC on the chemical carbofuran itself.

**3.** This area of the law was omitted from the Restatement (Second) of Torts for the reasons stated in the Introductory Note to Division Nine. 4 Restatement (Second) of Torts 1 (1979).

*Johnson,* 296 Pa.Super. 405, 442 A.2d 1114, 1120 (Sup.Ct.Pa.1982) (applying Pennsylvania law). We share the district court's concern that this action is impeding Fierch's ability to make a living by using the non-trade secret expertise he has developed in his career. *See* Kalinowski, *Key Employees and Trade Secrets,* 47 Va.L. Rev. 583, 586 (1961). The best way fairly to ensure that all the parties' rights are protected is to have them determined finally as quickly as possible. At oral argument FMC's attorney stated she would be ready to go to trial in three months, and TGI's attorney stated he was ready to start immediately. A closely supervised discovery schedule should be arranged immediately, and we further direct that the trial should take place as soon as practicable after discovery has been completed.

Judgment in accordance with opinion.