DDS, INC., Comptine Technology, C–Flex
Bearing Company, Inc., Plaintiffs,

v.

LUCAS AEROSPACE POWER
TRANSMISSION CORPO-
RATION, Defendant.

No. 97–CV–1222.

United States District Court,
N.D. New York.

Sept. 1, 1998.

Daniel S. Cohen, Cohen & Cohen, L.L.P., Utica, NY, for Plaintiffs.

Jonathan B. Fellows, Bond, Schoeneck & King, L.L.P., Syracuse, NY, for Defendant.

### MEMORANDUM–DECISION AND ORDER

HURD, United States Magistrate Judge.

## I.  INTRODUCTION

The plaintiffs, DDS, Inc. ("DDS"), Comptine Technology ("Comptine") and C–Flex Bearing Company, Inc. ("C–Flex") brought this action against the defendant, Lucas Aerospace Power Transmission Corporation ("Lucas"), alleging a violation of the Sherman Antitrust Act.  The plaintiffs claim that Lucas initiated a lawsuit against them in state court which was baseless and solely for the purposes of preventing competition and ensuring Lucas' monopoly.

## II. FACTS

Lucas manufactures and sells a non-lubricating pivoting device for mechanical assemblies ("Pivots"). In 1994, C–Flex entered into the market and began developing its version of the device ("Bearings") and by 1995 started selling them. DDS manufactures the Bearings for C–Flex. The Bearings were designed by Wayne A. Smith ("Smith"), a former Lucas employee, a current employee of DDS, and a shareholder of C–Flex.

### A. State Court Action

On September 25, 1995, Lucas brought an action against the plaintiffs and Smith in the Supreme Court of the State of New York, County of Oneida. Lucas alleged that: (1) Comptine wrongfully disclosed proprietary information about Lucas' Pivots in violation of a confidentiality agreement with Lucas; (2) C–Flex and DDS willfully and wrongfully encouraged Comptine to reveal this proprietary information; (3) C–Flex and DDS willfully and wrongfully encouraged Smith to reveal proprietary information about the Pivots in violation of his confidentiality agreement with Lucas; and (4) Smith breached his confidentiality agreement with Lucas.

On April 3, 1997, the plaintiffs and Smith moved for summary judgment dismissing defendant's action. After litigation was commenced but before the motion for summary judgment was decided, Lucas sent a letter ("Letter") to its customers and distributors in foreign countries. The Letter stated, in essence, that Lucas was aware that a company with which it was involved in litigation was soliciting Lucas customers for orders. The Letter also requested any customers solicited to contact Lucas to provide information regarding the activities of this competing company. After a lengthy discovery dispute, the state court ultimately granted the motion to dismiss the action on May 28, 1997.

### B. Present Action

The plaintiffs brought the instant action alleging that the defendant's state court action completely lacked merit and was commenced for the purposes of creating expense for the plaintiffs so as to inhibit their ability to compete with Lucas, discourage Lucas' customers from purchasing from the plaintiffs, and to obtain discovery of the plaintiffs' designs and manufacturing process of the Bearings. The plaintiffs are seeking treble damages (as allowed under the Sherman Antitrust Act) in the amount of ten million dollars ($10,000,000).

Lucas moved to compel answers to interrogatories and requests to produce documents. Lucas wants to obtain the plaintiffs' customer list and information about the manufacturing process of the plaintiffs' Bearings. The plaintiffs claim both are trade secrets and irrelevant to the instant action.[1] The plaintiffs cross-moved to compel Lucas to answer interrogatories and requests to produce. The plaintiffs want Lucas to (1) identify those customers to whom Lucas sent the Letter and/or had oral communications about the plaintiffs or their product[2]; (2) identify the customers to whom each distributor and Lucas representative sold Pivots; (3) breakdown by unit and dollar amount the sales figures of each distributor and representative to each Lucas customer; and (4) provide documents and interoffice correspondence containing any information and/or analysis done on plaintiffs' product. Lucas contends these are all trade secrets.

## III. DISCUSSION

### A. Motion to Compel

Rule 37 of the Federal Rules of Civil Procedure provides that a party may apply for an order compelling disclosure if a party fails to answer an interrogatory or respond to a request for production. Fed.R.Civ.P. 37(a)(2)(B). Here, the plaintiffs and the defendant have appropriately made motions to compel discovery as a result of failure by

---

1. The plaintiffs made supplemental disclosure of its actual customers and potential customers of which they were aware. That issue is now moot.

2. The defendant made supplemental disclosure of the customers with whom Lucas engaged in oral communications about the plaintiffs or their product. That issue is also now moot.

each to answer certain interrogatories and requests to produce documents on the grounds that the information sought are trade secrets.

While neither party has specifically moved for a protective order, the plaintiffs opposed Lucas' motion to compel, and vice versa, claiming the information sought must be protected as trade secrets. This is one possible ground upon which to seek a protective order. Moreover, requests for a protective order are commonly asserted in opposition to motions to compel. Therefore, the discussion which follows proceeds upon the presumption that each side desires a protective order to prevent disclosure of its alleged trade secrets, even though neither party specifically requested one.

■ Rule 26(c) of the Federal Rules of Civil Procedure provides that, upon motion, "the court may make an order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including an order "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Fed.R.Civ.P. 26(c)(7). "[T]here is no absolute privilege [against disclosure] for trade secrets and similar confidential information." *Federal Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979) (quoting 8 Charles Alan Wright et al., *Federal Practice and Procedure* § 2043 (2d ed.1994)). "The district court must balance the need for the trade secrets against the claim of injury resulting from disclosure." *Centurion Indus., Inc. v. Warren Steurer & Associates*, 665 F.2d 323, 325 (10th Cir.1981) (citing *Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993, 999 (10th Cir.), *cert. denied*, 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965)).

■ The party seeking to resist discovery must show that the information is a trade secret and disclosure might be harmful. *Id.* The harm must be "clearly defined and very serious ..." *Reliance Ins. Co. v. Barron's*, 428 F.Supp. 200, 203 (S.D.N.Y.1977) (quoting *United States v. International Bus. Mach's Corp.*, 67 F.R.D. 40, 46 (S.D.N.Y.1975)). If

these two elements are shown, then "the burden shifts to the party seeking [to compel] discovery to establish that the disclosure of the trade secrets is relevant and necessary to the action." *Centurion*, 665 F.2d at 325 (citing Wright, *supra*, § 2043). If relevance and necessity are shown, the trade secrets should be disclosed, unless they are privileged or the discovery requests are unreasonable, oppressive, annoying, or embarrassing. *Id.* at 326. If disclosure is ordered, the court may impose certain conditions as justice requires. Fed.R.Civ.P. 26(c); *Davidson Pipe Co. v. Laventhol and Horwath*, 120 F.R.D. 455, 465 (S.D.N.Y.1988) (stating that the sensitive nature of the information sought required a protective order limiting disclosure to counsel for the parties); see also Covey, 340 F.2d 993, 999 (stating that documents were only to be made available to counsel and independent experts, and only for purposes of that case).

## B. *Trade Secrets*

■ New York follows the Restatement of Torts definition of trade secrets, which states that:

A trade secret may consist of any formula, pattern, device, or compilation of information which is used in one's business and which gives him an advantage over competitors who do not know or use it. It may be a chemical compound, a process of treating or preserving materials, a pattern for a machine or other device, or a list of customers ... Generally, it relates to the production of goods, as, for example, a machine or formula for the production of an article.

The subject matter of a trade secret must be secret ... Substantially, a trade secret is known only in the particular business in which it is used. It is not requisite that only the proprietor of the business know it. He may, without losing his protection, communicate it to employees involved in its use [or others pledged to secrecy].

*Sheridan v. Mallinckrodt, Inc.*, 568 F.Supp. 1347 (N.D.N.Y.1983) (quoting Restatement (Second) of Torts § 757 cmt. b (1974)). The court looks at six factors to ascertain wheth-

er information is a trade secret. These factors are: (1) The extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) measures taken to guard the secrecy of the information; (4) the value of the information to the holder and his competitors; (5) the amount of effort or money to develop the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Waelde v. Merck, Sharp & Dohme*, 94 F.R.D. 27, 28 (E.D.Mich.1981)(quoting Restatement (Second) of Torts § 757 cmt. b). "[C]ustomer lists are trade secrets only if the names ... are not 'readily ascertainable' from sources outside an employer's business." *FMC Corp. v. Taiwan Tainan Giant Indus. Co., Ltd. etc.*, 730 F.2d 61, 63 (2d Cir.1984).

### 1. *Plaintiffs' Manufacturing Process*

The plaintiffs contend that their manufacturing process must be kept confidential in order to maintain the uniqueness of C–Flex Bearings. The plaintiffs' manufacturing process is a trade secret. This information is the formula for the production of Bearings which provides the plaintiffs with a business advantage over other competitors. The way in which the Bearings are made make them unique in the market and this information cannot easily be duplicated or acquired by others. In addition, this information is not generally known outside of the business and the holder of this information considers it of great value to hide from competitors.

### 2. *Defendant's Customer List*

The defendant refuses to reveal those customers who received the Letter as well as customers to whom each distributor and Lucas representative sold pivots. Applying the Restatement test, the defendant's customer lists are also trade secrets. The names of potential purchasers of this rather specialized product are not readily ascertainable outside of the business itself. The defendant has expended significant efforts to find purchasers of their product through research and advertising. Customer lists are also of great value to the holder. Clearly, revelation of one's customers, especially to a direct com-

petitor, places the business at a great disadvantage.

### 3. *Defendant's Analysis and Written Documentation About Plaintiffs' Product*

Lucas claims that turning over information which the defendant has about C–Flex Bearings may reveal information about its own product as well as strengths and weaknesses in the plaintiffs' product of which they may not be aware. The defendant's documentation relating to the plaintiffs' Bearings are also trade secrets. These documents are a compilation of information obtained regarding the plaintiffs' product which provide the defendant with a business advantage. The defendant can evaluate the strengths and weaknesses of the plaintiffs' Bearings and adjust its own product in order to make the product more competitive in the market.

In each case, the harm in disclosing the above information to the other side is clear. Revealing confidential information to one's direct competitor presents a clear risk that the other side will use the information to its own advantage, such as soliciting its competitor's customers and changing its own product as a result of obtaining information from its competitor.

Although all of the information sought are trade secrets and the harm in disclosing the information is clear, the inquiry does not end there. The next step is to determine if the plaintiffs and the defendant have shown that the information sought is relevant and necessary.

### C. *Relevance and Necessity*

Rule 26 of the Federal Rules of Civil Procedure states that "[p]arties may obtain discovery of any matter, not privileged, which is relevant to the subject matter involved in the pending action ..." Fed. R.Civ.P. 26(b)(1). The Rule goes on to state that "[t]he information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Relevancy is construed broadly during dis-

covery. *Cox v. McClellan,* 174 F.R.D. 32, 34 (W.D.N.Y.1997). A request for discovery is considered relevant if "there is any possibility that the information sought may be [applicable] to the subject matter of the action." Cox at 34; *United States v. International Bus. Mach's Corp.,* 66 F.R.D. 215, 218 (S.D.N.Y.1974). If proof of relevance or need is not established, discovery should be denied. *Centurion* at 325.

### 1. *Plaintiffs' Manufacturing Process*

██ Plaintiffs claim that information about their manufacturing process is irrelevant in the instant action because it has nothing to do with whether or not the defendant is hindering competition. The defendant argues that discovery of the plaintiffs' manufacturing process is relevant and necessary in the instant litigation. In order for the plaintiffs to succeed in their cause of action, they must show that the defendant's state court lawsuit was a "sham". *FilmTec Corp. v. Hydranautics,* 67 F.3d 931, 936 (Fed.Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 62, 136 L.Ed.2d 24 (1996). The defendant claims that it needs to know how the plaintiff manufactures its product in order to prove that it had grounds to sue in state court on the grounds that plaintiffs obtained and used confidential proprietary information about the Pivots and that Smith and Comptine breached their confidentiality agreements.

Without commenting upon the admissibility of this information, defendant's argument is persuasive that information about the plaintiffs' manufacturing process may be relevant and necessary for the defendants to oppose this action with respect to the issue of whether the defendants commenced a "sham" lawsuit in state court. Therefore, information about the plaintiffs' manufacturing process shall be discoverable.

### 2. *Defendant's Customer List*

██ The defendant argues that its customer lists are not relevant or necessary to show lost potential customers. Lucas contends that the plaintiffs cannot include these customers in their claim for damages if the plaintiffs were not aware of them. The plaintiffs have revealed their present customers and those potential customers of whom they were aware. The defendant has informed the plaintiffs which ones on that list were customers of Lucas. Lucas claims that this is all the information the plaintiffs need.

The plaintiffs on the other hand, claim they need to know the customers to whom Lucas sent the Letter, as well as every other customer of Lucas, in order to calculate damages in its claim that the defendants activities cost the plaintiffs potential customers. Plaintiffs wish to contact those people and entities who were sent the Letter in order to discover whether or not the Letter caused the plaintiffs to lose business.

The list of those customers to whom Lucas sent the Letter is relevant to the issue of lost potential customers and therefore should be discoverable. While the plaintiffs may not have been aware of certain potential customers at the time of the state court action, they may have become aware of them through advertising and research and solicited them for business. Defendant's letter to its customers may have affected which company these customers purchased from. However, every customer of Lucas' product is not relevant to the present action. The plaintiffs have failed to show why they need this information. In fact, the plaintiffs admitted in their answer to the defendant's interrogatories that their claim of lost customers is based only on those who were sent the Letter. (Pls.' answer to Def.'s Interrogs.).

### 3. *Documents in the possession of the defendant regarding the plaintiffs and the plaintiffs' product*

██ The defendant claims this information is irrelevant to the subject matter of the instant action. The plaintiffs contend that this information is relevant and necessary on the issue of whether the defendant's state court action lacked merit, either because the defendant had no information to support the action or it had information showing that the action lacked merit.

This information is both relevant and necessary for the plaintiffs to prove a necessary element of their case; that the defendants

commenced a "sham" lawsuit in state court. However, only analysis or written documentation regarding the plaintiffs and their product made before or during the state court action is discoverable. Any information compiled since the dismissal of the state court action is not discoverable.

### 4. *Breakdown of annual sales figures by unit and dollar amount among each distributor and Lucas representative*

The defendant disclosed its annual sales figures, breaking them down to unit and dollar amount, but did not break them down according to customers to whom each distributor and representative sold Pivots, claiming this was irrelevant. The plaintiffs claim this information is necessary to calculate lost profits from potential customers.

The defendant has already provided a breakdown of its yearly sales of Pivots. Once the plaintiffs are provided with Lucas' customer list, damages can be calculated. As stated before, the plaintiffs' claim of lost customers is only based on those to whom Lucas sent the Letter. The plaintiffs' have not sufficiently explained why they require a complete breakdown regarding the customers who were sent the Letter, let alone all of Lucas' customers. The plaintiffs' request for this information will be denied without prejudice to renew later if necessity is demonstrated.

Therefore, it is

ORDERED that

1. The plaintiffs shall provide a full and complete description of the manufacturing process of Bearings, as well as all documents relating to the production of C–Flex Bearings;

2. The defendant shall provide a complete list of customers to whom the Letter was sent;

3. The defendant shall provide all documentation, writings, memoranda, and correspondence pertaining to the plaintiffs' and/or plaintiffs' Bearings drafted, circulated, or mailed before or during the state court action;

4. The defendant need not provide a breakdown of annual sales figures to each customer by each distributor and representative;

5. The documents received by the parties' attorneys pursuant to this order shall be maintained in a safe and secure location, shall remain confidential and be used solely for the purposes of this action;

6. The above documents shall not be furnished to any of the parties, nor shall they be disclosed to anyone other than the parties' attorneys and expert witnesses subject to the terms of this order;

7. The above documents and any and all copies shall be destroyed by the attorneys at the conclusion of this action; and

8. The above documents shall be served on or before September 22, 1998.

IT IS SO ORDERED.